UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATISHA CALLOWAY,                               Case No. 15-10020

             Plaintiff,                      John Corbett O'Meara
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Stephanie Dawkins Davis
                                                United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 13)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On January 6, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett O'Meara referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for benefits.  (Dkt. 3).  This matter was reassigned to the undersigned Magistrate Judge on January 5, 2016, pursuant to administrative order.  (*See* Text-Only Order dated January 5, 2016).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 11, 13).

B.    Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income on February 24, 2012, alleging disability beginning on that same date. (Dkt. 7-2, Pg ID 56). Plaintiff's claim was initially disapproved by the Commissioner on July 6, 2012. *Id.* Plaintiff requested a hearing and on June 10, 2013, plaintiff appeared, along with her attorney, before Administrative Law Judge (ALJ) Melvyn B. Kalt, who considered the case de novo. (Dkt. 7-2, Pg ID 72-100). In a decision dated August 30, 2013, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 53-68). Plaintiff requested a review of this decision on October 10, 2013. (Dkt. 7-2, Pg ID 51). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on September 17, 2014, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 33-38); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1970 and was 41 years old on the application date and

37 years old on the alleged onset date.  (Dkt. 7-2, Pg ID 62, 66).  The ALJ applied

the five-step disability analysis to plaintiff's claim and found at step one that

plaintiff had not engaged in substantial gainful activity since the alleged onset date.

*Id*. at 58. At step two, the ALJ found that plaintiff's status post gunshot wounds to

the left shoulder, left buttock, and right leg were "severe" within the meaning of

the second sequential step.  *Id.* at 59.  At step three, the ALJ found no evidence that

plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  *Id*. at 61.  The ALJ determined that plaintiff had the residual

functional capacity (RFC) to perform sedentary work as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 416.967(a) except that she would require the
> option to alternate between sitting and standing at will.
> The claimant could never climb. She could occasionally
> balance, stoop, kneel, crouch, or crawl. The claimant
> could not perform activities requiring the use of the upper
> extremities above shoulder level. She could not work
> around unprotected heights. Due to pain and the side
> effects of medication, the claimant would be limited to

3

simple, unskilled work.

*Id*. at 61.  At step four, the ALJ concluded that plaintiff could not perform her past relevant work as a housekeeper, laundry laborer, telemarketer, and waitress.  *Id*. at 66.  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id*. at 67-68.

### B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ failed to accord proper weight to the opinions of her treating physician, Dr. Ayres.  Specifically, plaintiff contends that the ALJ indicating that her pain is no worse than a 3 out of a 10 on average since the application date is incorrect, especially considering the medical documentation from Dr. Ayres, which reports several dates of service where she reported a significant increase in pain.  According to plaintiff, the ALJ selectively relied on portions of Dr. Ayres' opinions without explaining why all of the opinion was not accepted.  Furthermore, the ALJ indicated that plaintiff's pain had been generally manageable with conservative treatment; however, plaintiff also points out that she often sought medical treatment when her pain was exacerbated and for which her conservative treatment was not working.  Thus, plaintiff contends, the evidence shows that conservative treatment was not working due to the fact she has had significant flare ups.  As indicated in the records, plaintiff reported her pain at a 10 at its worse and the 10 level was not addressed by the ALJ anywhere in the

4

decision.  According to plaintiff, this is especially problematic, considering how her pain level of a 10 would affect her RFC.  Plaintiff contends that the ALJ did not give the opinion of Dr. Ayres great weight, in fact, he specifically states that this medical opinion is given "very limited weight."  Therefore, the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to record adequate weight to the opinion of Dr. Ayres' records and findings.

Next, plaintiff argues that the ALJ erred in finding that plaintiff can perform sustained work activities, despite an absence of support for such a finding in the record.  Although the ALJ's RFC provides for "the option to alternate between sitting and standing at will," plaintiff says the evidence in the record does not support her ability to stand and/or sit for an 8 hour work day with breaks.  Specifically, the record documents a severe medical condition in her lumbar spine including pain, muscle spasm, and reduced range of motion.  The pain in her back radiates to her left buttock.  Throughout the record she complains of prolonged sitting and standing causing increased pain in her left buttock.  Even with her sedentary lifestyle, on April 9, 2012, she was seen by Dr. Ayres for increased pain in her buttocks.  (Dkt. 7-10, Pg ID 329).  On that date, she reported her pain as a 5 and her prescriptions for Oxycodone and Xanax were refilled.  On May 1, 2012, she was seen for increased pain in her left buttocks, right knee and left arm.  She reported her pain at a 4 and, at its worst, a 10.  (Dkt. 7-10, Pg ID 325).  In addition,

5

Plaintiff reported in multiple forms, as well as her testimony during the hearing, that she has to lay down for pain as a result of her left buttocks and prolonged sitting and/or standing aggravate her left buttocks pain.  In addition, the ALJ indicated that "the record does contain some evidence of pain with straight-leg raising, particularly on the left, which is consistent with the claimant's comments of discomfort in her back, left buttock and right knee."  Furthermore, the ALJ also stated that "Dr. Ayres' consistent findings of tenderness and increased pain with movements support a limitation to sedentary work with only occasional postural activities, allowing the opportunity to alternate between sitting and standing at will."  Therefore, the medical evidence from Dr. Ayres coupled with plaintiff's testimony does not support her ability to stand and/or sit for an 8-hour work day with breaks.

Plaintiff alleged nerve damage in her left upper extremity and repeatedly indicated that she has an inability to use her left upper extremity except to support the right upper extremity.  (Dkt. 7-2, Pg ID 77).  The ALJ observed that "… when the claimant presented for the psychological consultative examination, Dr. Mills stated that she had many rings on her fingers and was wearing make-up, which also demonstrates intact bilateral manual dexterity.  (Ex. B5F4-3)."  According to plaintiff, however, nowhere in the decision nor at the time of the hearing did the ALJ question her as to whether she put her own makeup on, nor does the report

6

from Dr. Mills indicate on what hand her rings were placed or how much make-up she was wearing. Without further exploration into the rings and her make-up, plaintiff contends that it was reversible error for the ALJ to assume that this one instance demonstrates that her bilateral manual dexterity is intact.

In addition, plaintiff asserts that the ALJ did not address the non-exertional capacities for performing sedentary work such as understanding, remembering and carrying out simple instructions. Rather, the ALJ merely states that plaintiff would be limited to simple, unskilled work in the RFC (Dkt. 7-2, Pg ID 61) but nowhere in the decision does the ALJ indicate how he concluded that the pain and side effects of medication would affect her ability to understand, remember and carry out simple instructions. Therefore, plaintiff maintains that the ALJ did not address the non-exertional limitations in order to perform sedentary work outlined within SSR 96-9p; nor did he address the medical evidence and her complaints in support of her ability to perform sitting or standing 8 hours a day with breaks. Agency regulations require that RFC assessments consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting, on a regular and continuous basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. (SSR 96-8p). The medical evidence as a whole (and as noted in the ALJ's findings) indicate that plaintiff has several severe medical conditions, including: status post gunshot wounds to left

shoulder, left buttock and right leg.  (Dkt. 7-2, Pg ID 59).  The ALJ also recognized several non-severe impairments, including: obesity, asthma, nerve damage and anxiety.  *Id*.  Although the ALJ found that plaintiff was capable of having a sit/stand option and sitting for 6 hours per day, according to plaintiff, she testified, and the medical documentation supports, that she has significant back pain as well as leg pain with prolonged sitting.  Even with a sit/stand option, plaintiff says she would still need to either sit, stand or walk for a total of all of these in an 8 hour work day.  Plaintiff specifically testified that she could sit for only 15 minutes before needing to get up and move (*id*. at 83) and testified that she requires "breaks" after any period more than 10 minutes of standing or sitting and will need to lay down and elevate her legs. (*Id*. at 88, 91).  Overall, according to plaintiff, the record supports her contention that her severe medical conditions preclude any sustained work activities.

Plaintiff next contends that the limitations preclude even sedentary work.  Courts have held repeatedly that sedentary work requires the ability to sit for extended periods and is precluded by an impairment which requires a claimant to alternate sitting and standing.  *Preston v. Secretary of H.H.S.*, 854 F.2d 815, 819 (6th Cir. 1988); *Howse v. Heckler*, 782 F.2d 626, 628 (6th Cir. 1986).  Plaintiff testified that she cannot sit or stand for an entire day, and needs breaks and to switch back and forth.  (Dkt. 7-2, Pg ID 92-93).  In *Faison v. Secretary of H.H.S.*,

8

679 F.2d 598, 599 (1982), the court took judicial notice that sedentary jobs, while requiring less strength than other jobs, also require more manual dexterity and speed than other jobs. This dexterity is simply impossible where plaintiff repeatedly testified about her "excruciating" pain in her arm and her total inability to use her left hand. (Dkt. 7-2, Pg ID 80, 77). According to plaintiff, this finding does not allow for plaintiff to perform even unskilled, sedentary work.

According to plaintiff, the ALJ's finding that she was capable of a limited range of unskilled, sedentary work is not supported by the requisite substantial evidence, and should be reversed accordingly. Here, the only physical RFC in the file was performed by Dr. Montasir who performed a consultative examination on June 16, 2012. (Dkt. 7-9, Pg ID 296-302). It was Dr. Montasir's opinion that plaintiff should be able to work as far as her physical condition is concerned and that there would be limitations on her working overhead, she should not be involved in climbing ropes, ladders, or scaffolding due to the above impressions and walking, sitting and standing should be without difficulty. Furthermore, he indicated that pushing, pulling and lifting should be reasonable and that carrying should be mainly with the right hand. However, Dr. Montasir does not provide any further limitations especially considering the side effects of her medications or pain levels. Plaintiff contends that nowhere in the decision does the ALJ indicate the medical evidence he relied on in providing her with "the option to alternate

9

between sitting and standing at will." Plaintiff asserts that there is no assessment from a medical provider which supports the ALJ's conclusion and his resulting RFC.

Plaintiff argues that the ALJ's RFC findings directly contradict the testimony and evidence presented at the hearing. The plaintiff testified that she could lift, at most, 15 pounds with both hands. Further, she testified that she needed to elevate her left leg on a regular basis throughout the day. (Dkt. 7-2, Pg ID 93). Several hypotheticals were posed to the VE, including one asking him to presume that all of plaintiff's testimony was accurate. (*Id.* at 97). The VE responded that if the plaintiff needed multiple naps per day, as she testified, that would preclude employment. A further hypothetical was posed to the VE based on plaintiff's testimony regarding her drowsiness and weekly panic attacks, asking if she had more than 2 absences per month, and the VE replied that "would eliminate these jobs." (*Id*. at 98). Despite this direct testimony, the ALJ found that plaintiff is not disabled and can hold a sedentary job (of only three given). (*Id*. at 68). According to plaintiff, this is particularly significant where the burden to prove that a claimant could perform other work existing in the national economy falls on the Commissioner. Thus, plaintiff contends that the ALJ's findings are not supported by substantial evidence where the determination that plaintiff can work is directly contradicted by both her own testimony and that of the VE.

C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ properly assessed the opinion evidence of record, in accordance with 20 C.F.R. § 416.927 and Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).  (Dkt. 7-2, Pg ID 66). Contrary to plaintiff's argument, the Commissioner maintains that Dr. Ayres did not provide an "opinion" within the meaning of the regulations and the ALJ thoroughly considered the medical evidence, including Dr. Ayres's treatment notes and the opinion of consultative examiner Dr. Montasir, in his RFC assessment.  *Id*. at 62-66.  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  The Commissioner points out that plaintiff's treating physician, Dr. Ayres, did not opine that she was disabled, nor did his notes indicate any functional limitations related to her impairments.  (Dkt. 7-7, Pg ID 222-239; Dkt. 7-8, Pg ID 240-266; Dkt. 7-9, Pg ID 269-295; Dkt. 7-10, Pg ID 313-336).  Thus, plaintiff's record did not include any "opinion[s]" from her treating physician.  In the absence of a treating source opinion, the ALJ must consider, and may rely on, non-treating or non-examining medical opinions, such as those from state agency physicians or psychologists or consultative examiners.

20 C.F.R. § 416.927(e)(1); *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Plaintiff argues that the ALJ outlined Dr. Ayres's "opinion" in his decision, but improperly considered Plaintiff's pain and the fact that it waxed and waned. Again, the Commissioner points out that Dr. Ayres did not provide an "opinion" within the meaning of the regulations and the ALJ thoroughly considered the doctor's treatment notes in his RFC determination.  20 C.F.R. § 416.927(a)(2). Plaintiff also incorrectly states in her brief that the ALJ specifically stated he gave "very limited weight" to the doctor's opinion; the ALJ made no such finding.  (Dkt. 7-2, Pg ID 61-66).  The ALJ assigned "great weight" to the consultative examiner's opinion, which was proper under the regulations, in the absence of a treating source opinion and where the opinion itself was consistent with plaintiff's medical history and the findings from her physical examination.  *Id*. at 66; 20 C.F.R. §416.927(e)(1).

According to the Commissioner, plaintiff's argument, that the ALJ improperly considered the evidence of her level of pain, misunderstands this Court's standard of review.  The ALJ's findings as to plaintiff's pain were substantially supported by the medical record.  (Dkt. 7-2, Pg ID 64).  Plaintiff points to medical evidence that she argues demonstrates the ALJ improperly considered Dr. Ayres's treatment notes, as she "often sought medical treatment

12

when her pain was exacerbated and for which her conservative treatment was not working." Pl. Br. at 13. The Commissioner suggests, however, that it is the Commissioner's duty, not this Court's, to weigh the evidence and resolve material conflicts in the evidence. *Perales*, 402 U.S. at 399-400. The ALJ's findings are not subject to reversal merely because substantial evidence may exist in the record to support a different conclusion, provided there is substantial evidence to support the ALJ's findings, as the Commissioner asserts there is in this case. *Torres v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 748, 754 (6th Cir. 2012). The Commissioner further contends that the records plaintiff cites do not contradict the ALJ's findings. Although her pain level may have been higher at points, such as at particular doctor visits or on her worst day, during the adjudicated period, she mainly reported to Dr. Ayres that her pain was an average of three out of ten on the pain scale. (Dkt. 7-9, Pg ID 273; Dkt. 7-10, Pg ID 314, 316; 320, 323, 330).

While Plaintiff suggests that Dr. Ayres's treatment notes are inconsistent with the RFC finding, the record does not support her argument. Plaintiff has not pointed to any evidence, from Dr. Ayres's treatment notes, that indicates a finding of disability was required, or that suggests further limitations to the RFC were warranted. The Commissioner maintains that the ALJ properly determined Plaintiff maintained the RFC to perform limited sedentary work, relying on the substantial medical evidence of record, including treatment notes from Dr. Ayres

13

and the opinion evidence.

Next, the Commissioner contends that substantial evidence, including treatment notes and the opinion of the consultative examiner, support the ALJ's determination that plaintiff could perform limited sedentary work, given a sit/stand option, despite her physical impairments. (Dkt. 7-2, Pg ID 61); *see* 20 C.F.R. §§ 416.920(e), 945(a). The ALJ determined that plaintiff retained the RFC to perform sedentary work, except she would require the option to alternate between sitting and standing. (Dkt. 7-2, Pg ID 61); 20 C.F.R. § 416.967(a). Further, the ALJ found plaintiff: could never climb; could occasionally balance, stoop, kneel, crouch, and crawl; could not perform activities requiring the use of her upper extremities above shoulder level; and could not work around unprotected heights. (Dkt. 7-2, Pg ID 61). Because of pain and the side effects of medication, plaintiff was limited to simple, unskilled work. *Id*.

The ALJ assigned Dr. Montasir's opinion "great weight," as it was consistent with Plaintiff's medical history and the findings from her physical examination. (Dkt. 7-2, Pg ID 65). The ALJ rejected Dr. Montasir's opinion to the extent that it concluded plaintiff's ability to sit, stand, or walk would not be affected. *Id*. According to the Commissioner, the ALJ limited plaintiff to sedentary work, consistent with her persistent tenderness and pain with range of motion of her back and right knee. *Id*. The limitation to occasional postural activities was consistent

14

with Dr. Montasir's opinion and physical examination findings, as well as the

treatment notes from Dr. Ayres.  (*Id*. at 63; Dkt. 7-10, Pg ID 319).  The ALJ

provided an opportunity to alternate between sitting and standing at will to account

for her tenderness and increased pain with movement.  (Dkt. 7-2, Pg ID 63).

The Commissioner asserts that the ALJ's discussion established the RFC

finding was supported by substantial evidence.  *Id*. at 61-66.  According to the

Commissioner, Dr. Ayres's treatment notes are consistent with the ALJ's finding

that plaintiff could perform a limited range of sedentary work and was not totally

disabled.  While the limitations in the RFC are consistent with plaintiff's

tenderness to palpation and pain with movement of the left shoulder, left hip, and

right leg and low back tenderness, with occasional muscle spasms, (Dkt. 7-2, Pg ID

62; Dkt. 7-7, Pg ID 234; Dkt. 7-8, Pg ID 245, 251, 254, 263, 266; Dkt. 7-9, Pg ID

273, 280, 283, 287, 289; Dkt. 7-10, Pg ID 316, 319, 332), during the relevant

period, plaintiff reported average pain levels that were mild, suggesting, as the ALJ

found, that she was capable of performing some full-time work, with proper

limitations for her impairments.  (Dkt. 7-2, Pg ID 64; Dkt. 7-9, Pg ID 273; Dkt. 7-

10, Pg ID 314, 317, 320, 232, 330); *Baily v. Comm'r of Soc. Sec.*, 623 F. Supp. 2d

889, 902-03 (W.D. Mich. 2009) (and cases cited) ("In other words, pain may or

may not be disabling, i.e., under appropriate circumstances a claimant will be

denied disability benefits if there is substantial evidence that [s]he can work despite

15

the pain.").

The Commissioner also points out that during her consultative examination, plaintiff had a normal gait and stance, ambulated well, had no muscle atrophy or joint deformity, could tandem walk, could get on and off the examination table, and had fair muscle tone.  (Dkt. 7-9, Pg ID 297).  The RFC is consistent with Dr. Montasir's finding that fatigue might be possible if plaintiff was working overhead using mainly her left extremity, but otherwise had no neurological dysfunction. (Dkt. 7-2, Pg ID 61; Dkt. 7-9, Pg ID 298).  The doctor found plaintiff's range of motion was normal in her cervical and lumbar spine, both elbows, hips, knees, ankles, and wrists, and in her right shoulder, but was slightly reduced in her left shoulder.  (Dkt. 7-9, Pg ID 299-300).  Plaintiff's reflexes were normal bilaterally in both her upper and lower extremities.  *Id*. at 301.  As the ALJ concluded, while her symptoms suggested work limitations were appropriate, there was no opinion that plaintiff was completely precluded from all work activity.  (Dkt. 7-2, Pg ID 61-66).

Plaintiff also argues that the ALJ erroneously assumed that "her bilateral manual dexterity [wa]s intact," where she alleged nerve damage in her left upper extremity and an inability to use her left upper extremity, except to support her right upper extremity.  (Dkt. 11, PgID 281).  In part, the ALJ found plaintiff maintained bilateral manual dexterity because, during her psychological consultative examination with Terrance Mills, Ph.D., she wore many rings on her

16

fingers and was wearing make-up.  (Dkt. 7-2, Pg ID 63; Dkt. 7-9, Pg ID 306).

According to the Commissioner, there was no error in the ALJ's reliance on this

observation, even though he did not elicit testimony during the hearing as to which

hand plaintiff wore her rings or whether she was able to apply make-up herself.

The Commissioner contends that plaintiff has pointed to nothing in the medical

record that contradicts the ALJ's finding.

Further, although the ALJ found plaintiff maintained bilateral manual

dexterity, the ALJ did limit the use of her upper extremities in the RFC, consistent

with the medical evidence.  (Dkt. 7-2, Pg ID 61, 63).  The RFC limited plaintiff to

lifting no more than ten pounds occasionally, with no climbing and no overhead

work involving either upper extremity—limitations supported by Dr. Montasir's

opinion.  *Id.*; (Dkt. 7-9, Pg ID 298)*.*  Dr. Ayres found that plaintiff had increased

pain with palpation and movement of her left shoulder, but did not opine any

limitations resulted from her impairment, and made no negative findings regarding

her manual dexterity.  (Dkt. 7-2, Pg ID 63; Dkt. 707, Pg ID 234; Dkt. 7-8, Pg ID

244; 251, 254, 262, 265; Dkt. 7-9, Pg ID 272, 280, 283, 287, 289; Dkt. 7-10, Pg ID

316, 319, 332).  Further, during plaintiff's examination with Dr. Montasir, her

flexion and extension in both hands and all of her fingers were normal, her reflexes

were normal bilaterally in both upper extremities, her fine and gross dexterity were

intact, and her handgrip was good bilaterally, with her grip strength at five out of

five.  (Dkt. 7-2, Pg ID 63; Dkt. 7-9, Pg ID 297, 300-302).  The Commissioner

maintains, therefore, that the ALJ's findings and the limitations in the RFC were

supported by substantial evidence.

Plaintiff next argues that limiting plaintiff to simple, unskilled work in the

RFC did not address the other non-exertional capacities required for performing

sedentary work, such as understanding, remembering, or carrying out simple

instructions.  Plaintiff also contends the ALJ's failure to articulate how her pain

and the side effects from her medication would affect these work-related mental

abilities was error.  The Commissioner acknowledges that when assessing RFC,

non-exertional capacity, such as mental limitations, "must be expressed in terms of

work-related functions," including the ability to "understand, carry-out and

remember instructions, use judgment in making work-related decisions, respond

appropriately to supervision, co-workers, and supervisors, and deal with changes in

a routine work setting."  SSR 96-8p, 1996 WL 374184, at *6 (July 1, 1996); see

also SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) (discussing the basic mental

demands of competitive, unskilled work, as part of a broader consideration of what

limitations severely limit the potential occupational base in the step-five inquiry).

But, the Commissioner points out that the ALJ is not required to discuss the

capacities where no limitation has been alleged.  *Delgado v. Comm'r of Soc. Sec.*,

30 Fed. Appx. 542, 547 (6th Cir. 2002).  According to the Commissioner,

18

plaintiff's argument fails to identify how the evidence contradicts the mental RFC finding. Initially, plaintiff did not allege disability based on any mental impairment. (Dkt. 7-3, Pg ID 115). The ALJ considered plaintiff's anxiety disorder and affective disorder at steps three and four of the sequential evaluation, although he determined both were non-severe impairments within the meaning of the Act, as they did not cause more than minimal limitation in her ability to perform basic mental work activities. (Dkt. 7-2, Pg ID 59-66).

The Commissioner also maintains that there is not substantial evidence that plaintiff's ability to understand, remember, or carry out instructions was limited. The ALJ found plaintiff was mildly limited in the area of concentration, persistence, or pace, as she complained of significant drowsiness from pain medication. *Id*. at 60. But plaintiff "did not allege serious problems with maintaining attention or completing tasks due to her mental impairments," and she consistently reported to Dr. Ayres that she experienced no side effects or problems with her medications. *Id*. at 60, 63. In her function report, plaintiff stated she could pay attention for "as long as needed." *Id*. at 60; (Dkt. 7-6, Pg ID 188). During her psychological consultative examination, plaintiff did not demonstrate any deficits in memory. (Dkt. 7-2, Pg ID 60; Dkt. 7-9, Pg ID 307-308). However, giving plaintiff the benefit of the doubt that medication could reasonably cause a limitation, the ALJ limited her to simple, unskilled work, with no exposure to

19

unprotected heights.  (Dkt. 7-2, Pg ID 63).

The Commissioner contends that although the record supports plaintiff does have some back and leg pain, nothing contradicts the ALJ's finding that, despite her impairments, plaintiff maintained the ability to work at a limited sedentary capacity.  To the extent plaintiff argues that the ALJ erred in assessing the credibility of her testimony and subjective complaints of pain, weighing conflicting evidence falls squarely within the ALJ's province, and, according to the Commissioner, the Court should not disturb his sensible resolution of these conflicts.  *Id*. at 62-66; *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).  The ALJ's credibility determination was "sufficiently specific to make clear . . . the weight [he] gave to . . . statements and the reasons for that weight." *Burbo v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 526, 540 (E.D. Mich. 2012) (citing SSR 96-7p, 1996 WL 374186, at *2 (July 1, 1996)).

Plaintiff's final contention is that case law precludes the ALJ's RFC finding, as sedentary work is not compatible with a limitation to alternating between sitting and standing.  The Commissioner maintains, however, that on the facts of this case, however, plaintiff's argument is not persuasive.  There is no error if, when non-exertional impairments are present which may be expected to significantly erode the occupational base for the full range of sedentary work, the Commissioner consults with a VE to determine whether a claimant can still perform a significant

number of sedentary jobs. *Bennett v. Astrue*, 2008 WL 345523, at *5 (W.D. Ky. Feb. 7, 2008) (and sources cited). In *Howse*, which plaintiff relies on, there was no VE testimony to confirm that the requirement to alternate between sitting and standing would still allow the plaintiff to perform a significant number of jobs. *Howse*, 782 F.2d at 628. Here, on the contrary, the VE testified that even with such limitation, plaintiff was able to perform other work, such as information clerk, hand packager, and security monitor. (Dkt. 7-2, Pg ID 66-67, 95-97). In sum, the ALJ weighed the evidence and assessed the credibility of plaintiff's subjective complaints to determine she maintained the ability to perform a limited range of sedentary work. The Commissioner maintains that the ALJ's RFC finding is consistent with both the opinion of the consultative examiner and the treatment notes from plaintiff's treating physician.

Substantial evidence supports the ALJ's finding that plaintiff was not disabled where there was other work in the economy that she could perform with her RFC. (Dkt. 7-2, Pg ID 67). Plaintiff argues that the step-five finding was not supported by substantial evidence, where the VE testified that the need to elevate her leg and take multiple naps per day would preclude all employment. *Id.* at 96-97. The Commissioner argues that plaintiff's argument is without merit. Plaintiff does not argue that the hypothetical question did not match the RFC, but that the ALJ's RFC finding was incorrect, where it did not include limitations that she

testified to, and the hypothetical question was equally flawed.  *Id*. at 55-56.

However, the Commissioner points out that a hypothetical question need only

include those limitations that the ALJ accepts as credible.  *See Casey v. Sec'y of*

*Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Blacha v. Sec'y of*

*Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Essentially, plaintiff's

argument is a collateral attack on the RFC finding, the credibility determination,

and the ALJ's weighing of the evidence.

The Commissioner next points out that the ALJ found plaintiff's statements

that she would need to lie down more than ten times per day, either due to

medication side effects, to relieve pain, or to elevate her right knee above the level

of her hip were not credible.  (Dkt. 7-2, Pg ID 63, 93; Dkt. 7-9, Pg ID 296-297;

305-206).  According to the Commissioner, nothing in the medical record suggests

stiffness or swelling in her knee that would require elevating her leg multiple times

per day.  (Dkt. 7-2, Pg ID 63).  Plaintiff did not indicate to Dr. Montasir that she

spent a significant amount of time lying down.  (Dkt. 7-2, Pg ID 63; Dkt. 7-9, Pg

ID 296-298).  According to the Commissioner, the ALJ supportably found

plaintiff's habit of lying down related more to her incarceration than her physical

symptoms.  (Dkt. 7-2, Pg ID 63).  Further, plaintiff did not report debilitating

fatigue or excessive drowsiness to Dr. Ayres, who prescribed her pain medications.

(Dkt. 7-2, Pg ID 63-64; Dkt. 7-7, Pg ID 234; Dkt. 7-8, Pg ID 244, 251, 262, 265;

Dkt. 7-9, Pg ID 272, 280, 283, 287, 289; Dkt. 7-10, Pg ID 316, 319).  Therefore, the Commissioner maintains that the ALJ properly concluded that plaintiff exaggerated the cause and frequency of her daily naps during the hearing.  (Dkt. 7-2, Pg ID 64)

Similarly, although plaintiff complained of weekly panic attacks, the Commissioner points out that the record reflects she reported improvement in her anxiety with Xanax.  (Dkt. 7-2, Pg ID 64, 87-88; Dkt. 7-7, Pg ID 234; Dkt. 7-8, Pg ID 244, 251, 254, 262, 265; Dkt. 7-9, Pg ID 272, 280, 283, 287; Dkt. 7-10, Pg ID 316, 319).  During the psychological consultative examination, with Dr. Mills, the doctor did not observe any overt signs of anxiety.  (Dkt. 7-2, Pg ID 60; Dkt. 7-9, Pg ID 306-307).  During her psychological evaluation when she was incarcerated, plaintiff also demonstrated no signs of anxiety.  (Dkt. 7-2, Pg ID 60; Dkt. 7-10, Pg ID 341).  As demonstrated, therefore, the Commissioner urges the Court to concludes that substantial evidence supports the ALJ's RFC and credibility findings, his weighing of the evidence, and, ultimately, his determination that plaintiff was not disabled within the meaning of the Act.

## II.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

24

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

25

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

27

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Treating Physician

The undersigned agrees with the Commissioner that Dr. Ayres did not

provide an "opinion" within the meaning of the regulations.  The law and the

Social Security regulations recognize a difference between a treating physician's

treatment notes or comments, and a treating physician's "medical opinion." *See* 20

29

C.F.R. § 404.1527(a)(2); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)"); *Bowen*, 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without a residual functional capacity ("RFC") assessment). According to the relevant regulation, medical opinions are defined as statements "that reflect *judgments* about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). Only opinions of treating physicians are entitled to controlling weight. On the other hand, mere *observations* about a claimant's condition do not qualify as "medical opinions." *Bass*, 499 F.3d at 510 ("Observations about plaintiff's gait and ambulation, then, are more like statements made by plaintiff and about his conditions, statements that the ALJ here found not entirely credible when compared to the objective medical evidence."). The Commissioner correctly points out that Dr. Ayres did not opine that she was disabled, nor did his notes indicate any functional limitations related to her impairments. (Dkt. 7-7, Pg ID 221-239; Dkt. 7-8, Pg ID 241-266; Dkt. 7-9, Pg ID 269-294; Dkt. 7-10, Pg ID 313-336). Indeed,

Dr. Ayres' medical reports do not reflect opinions regarding plaintiff's symptoms, diagnosis, or prognosis. *See Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009) ("[T]he regulations and our case law also make clear that before the ALJ must apply the good reasons rule, there must be a genuine assertion by the treating physician of an opinion involving the claimant's "symptoms, diagnosis, and prognosis. A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.") (internal citation omitted); *see also King v. Comm'r of Soc. Sec.*, 2013 WL 3456957, at *7 (E.D. Mich. July 9, 2013) ("The Sixth Circuit has held that the treating source rule does not apply unless there is a genuine assertion by the treating physician of an opinion involving the claimant's "symptoms, diagnosis, and prognosis.") (internal quotation marks and citations omitted); SSR 96-2p, 1996 WL 374188, at *2. Here, Dr. Ayres simply did not offer any opinions regarding plaintiff's functional limitations for the ALJ to weigh. Thus, the undersigned finds no error in this regard.

2.     Sustained work activity

Plaintiff's complaints that she is not able to perform work on a sustained basis amount to an improper request for the Court to re-weigh the evidence. Essentially, plaintiff is asserting a claim of improper "cherry-picking" of the record by the ALJ. It is generally recognized that an ALJ "may not cherry-pick facts to

31

support a finding of non-disability while ignoring evidence that points to a

disability finding." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D.

Ohio 2013), citing *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010)

(citation omitted). Yet, "the ALJ does not 'cherry pick' the evidence merely by

resolving some inconsistencies unfavorably to a claimant's position." *Id.*, quoting

*Solembrino v. Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio 2011). The

undersigned cannot conduct a *de novo* review of the record evidence, and the

findings of the ALJ are not subject to reversal merely because there exists in the

record substantial evidence to support a different conclusion. *Buxton v. Halter*,

246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of

Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also

support another conclusion, the decision of the [ALJ] must stand if the evidence

could reasonably support the conclusion reached.") (citation omitted). This is so

because there is a "zone of choice" within which the Commissioner can act,

without the fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th

Cir. 1986) (citation omitted). Thus, it is not uncommon in disability cases for there

to be some inconsistencies in the record. It is the duty of the ALJ to resolve any

inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence

merely by resolving some inconsistencies unfavorably to a claimant's position. *See*

*Smith*, 2013 WL 943874, at *6 ("Rather than describing the ALJ's actions as

'cherry-picking,' the Sixth Circuit has explained that it could be more neutrally described as 'weighing the evidence.'"), citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).  In the view of the undersigned, that is precisely what the ALJ did here.  He weighed the evidence and made a determination, supported by substantial evidence, that plaintiff is not disabled.  The undersigned sees no evidence of improper "cherry-picking" of the record in order to find that plaintiff can work on a sustained basis.  This is especially true because here, there is no opinion evidence from any treating physician indicating that plaintiff's physical or mental limitations were greater than those found by the ALJ in formulating the RFC.  *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir.1987), citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").[2]  Morever, the opinion of Dr. Montasir, the consulting examiner, fully support the ALJ's conclusion that plaintiff can perform work on a sustained basis.  Thus, the undersigned finds no error in the ALJ's determination that plaintiff could perform work on a sustained basis.

---

[2]  The ALJ found that plaintiff's mental impairments were nonsevere, and plaintiff does not challenge this step two finding.  While plaintiff makes some reference to the ALJ's failure to account for her ability to concentrate, the ALJ specifically accommodated this concern by limiting her to simple, unskilled work, based on her pain and medication side effects.  And again, no physician concluded that plaintiff is more limited than as found by the ALJ, with respect to either her mental or physical limitations.

3.    Sit/stand option for sedentary RFC

Plaintiff argues that a sit/stand option is not consistent with sedentary work. Plaintiff's argument, however, misses the mark.  Where, as here, expert vocational testimony is obtained, as opposed to relying solely on the Grids, sedentary work is not inconsistent with a sit/stand option.  *See Sharp v. Barnhart*, 152 Fed.Appx. 502, 506-07 (6th Cir. 2005) (rejecting claim that unskilled light work was inherently inconsistent with a sit/stand option); *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224 (6th Cir. 1988) (sit/stand option not inconsistent with sedentary work if vocational expert identifies jobs that an individual with the claimant's residual functional capacity could do); *Whiting v. Comm'r of Soc. Sec.*, 2013 WL 5595359 (E.D. Mich. 2013) ("SSR 83-12 explicitly recognizes that there are some 'light' jobs that can accommodate a sit/stand option . . . .").  Here, the VE specifically testified that a sufficient number of jobs in the sedentary work category were available with both a sit/stand option.  It is well-established that sedentary work is not precluded by a sit/stand option.  Rather, this is an issue that must be addressed by VE testimony, which is precisely what the ALJ did here.  *Wyatt v. Comm'r of Soc. Sec.*, 2014 WL 793643 (E.D. Mich. 2014) (Plaintiff's RFC also included a sit/stand option which would not be accounted for by the grids and would need to be addressed by a VE), citing *Lash v. Astrue*, 2013 WL 821333, at *8 (N.D. Ohio 2013).  The undersigned finds no reversible error in this regard.

34

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

35

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: March 1, 2016                    s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 1, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov

36